## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

MICHAEL T. FLYNN

             Plaintiff,                          8:23–CV–02429(JSM/SPF)

vs.

ANDREW WEISSMANN, NICOLLE
WALLACE, and MSNBC CABLE L.L.C.

             Defendants.

_____/

### DEFENDANT MSNBC'S MOTION TO DISMISS COMPLAINT

Pursuant to Rule 12(b)(6), Defendant MSNBC Cable L.L.C. ("MSNBC") moves to dismiss the defamation suit filed by Plaintiff Michael Flynn ("Plaintiff" or "Flynn") because his suit fails to state a claim.[1] In addition, MSNBC joins and fully adopts the motion to dismiss for improper venue, or, alternatively, request to transfer filed by defendants Nicolle Wallace and Andrew Weissmann, and consents to the transfer to the U.S. District Court for the Southern District of New York.

## INTRODUCTION

Michael Flynn swore that he lied to the FBI. He's now suing a former federal prosecutor for stating on a news commentary podcast that Flynn swore that he lied to the FBI. Flynn is also suing because he takes offense to a journalist characterizing him as having "plotted the insurrection," when judicial records and legislative records aver that he fomented the insurrection that followed the 2020 presidential election by advocating for or discussing declaring a national emergency, seizing

---

[1] Defendants Nicolle Wallace and Andrew Weissmann join this motion as well.

voting machines, deploying the military, and declaring martial law. In short, the two statements at issue fit into multiple independent categories of constitutionally protected political expression: truth, commentary on judicial records, opinion, and statements about a former public official published without actual malice. Because the Complaint is facially and irredeemably deficient, MSNBC asks the Court to dismiss Flynn's suit with prejudice.

## BACKGROUND

Flynn is a former U.S. Army lieutenant general who, for about three weeks in 2017, served as the National Security Advisor to then-President Donald Trump. *See* Declaration of Minch Minchin ("Minchin Decl."), Ex. 1 at 2.[2] Flynn resigned from his position after allegations emerged that he had lied to the FBI and the Vice President about his communications with the Russian ambassador. *Id*. The primary factual basis for the instant suit, as described in the Complaint, derives from Flynn's criminal case in the U.S. District Court for the District of Columbia concerning his lies to the FBI. (D.E. 1 ¶¶ 16–17 n.3–5).

---

[2] This motion references several documents—attached to the Minchin Declaration, which is filed contemporaneously herewith—that the Court may consider without converting to a motion for summary judgment. Pursuant to Rule of Evidence 201, MSNBC requests the Court take judicial notice of the following court records, attached to the Minchin Declaration: **Exhibits 1 through 8** are court filings in *U.S. v. Flynn*, Case No. 1:17-cr-232 (D.D.C.), **Exhibit 9** is the Order Entering Special Purpose Grand Jury's Final Report Into Court Record, *In Re 2 May 2022 Special Purpose Grand Jury*, No. 2022-EX-000024 (Ga. Superior Ct. (Fulton County) Sep. 8, 2023), and **Exhibits 10 and 11** are court filings in *Flynn v. Pelosi, et al.*, No. 8:21-cv-2956 (M.D. Fla.). The Court may consider these judicial records because, as explained on pages 9–10, *infra*, the filings are central to issues presented in the Complaint and constitute records of unquestionable accuracy. *See Allison v. Parise*, No. 8:12-CV-1313, 2013 WL 877111, at *2 (M.D. Fla. Mar. 8, 2013); *Ellison v. Brennan*, No. 3:19-CV-726, 2020 WL 2523287, at *2 (M.D. Fla. May 18, 2020); *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 684, 688 (S.D.N.Y. 2022). **Exhibits 12 and 13** are articles concerning Flynn, attached for the purposes of demonstrating Flynn's status as a public figure (but not for the truth of any matter stated therein). *See Turner v. Wells*, 879 F.3d 1254, 1272 n.5 (11th Cir. 2018).

Flynn's criminal information charged that he "did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States," in violation of 18 U.S.C. 1001(a)(2). *See* Minchin Decl., Ex. 2 at 1. Flynn's lies were matters of high public concern; as the court adjudicating the case noted, "it is undisputed that Mr. Flynn not only made those false statements to the FBI agents, but he also made the same false statements to the Vice President and senior White House officials, who, in turn, repeated Mr. Flynn's false statements to the American people on national television." *Id.*, Ex. 3 at 91.

On November 30, 2017, Flynn pled guilty and admitted that he, in fact, lied to the FBI and was guilty of the underlying criminal offense. *Id.*, Exs. 4, 5. The district court twice accepted Flynn's guilty plea, finding that he entered the plea knowingly, voluntarily, and intelligently with the advice of counsel. *Id.*, Ex. 1 at 7–8. At his sentencing hearing on December 18, 2018, Flynn affirmed under oath that he lied to the FBI and the district court granted his request to continue the proceeding to allow Flynn to continue to cooperate with the government. *Id.*, Ex. 6 at 10, 15–16, 47– 49.

Before Flynn could be sentenced, in January 2020, he moved to withdraw his guilty plea and moved to dismiss the charges against him. *Id.*, Ex. 1 at 7–8. In February 2020, the Department of Justice ("DOJ") opposed Flynn's motion to dismiss, arguing his allegations did not pertain to the case, had already been rejected by the court, and had no relevance to his false statements to the FBI. *Id.* at 10. On May 7, 2020, DOJ changed its position and filed a motion to dismiss the criminal

information with prejudice. *Id.* at 11. Flynn then moved to withdraw his pending

motions and consented to DOJ's motion to dismiss. *Id.*

The court appointed an amicus to present arguments in opposition to DOJ's

motion to dismiss and address whether Flynn should be held in criminal contempt

for perjury.[3] *Id.*, Ex. 7. The amicus concluded that DOJ's motion should be denied

for two reasons: First, DOJ's reasons for dismissal were not credible because

overwhelming evidence demonstrated Flynn' guilt and DOJ's assertion that there

was insufficient evidence "taxes the credulity of the credulous." Second, DOJ's

motion to dismiss constituted a gross violation of executive power. *Id.*, Ex. 8 at 11–

12, 47–68. The amicus also determined that "Flynn has indeed committed perjury in

these proceedings, for which he deserves punishment, and the Court has the

authority to initiate a prosecution for that crime." *Id.*, at 12, 69–80. The amicus

recommended, however, that the court "take Flynn's perjury into account in

sentencing him on the offense to which he has already admitted guilt." *Id.* at 12.

Before the district court could rule on DOJ's motion to dismiss, then-President

Trump pardoned Flynn of his crime and Flynn accepted the pardon. *Id.*, Ex. 1 at 16–

17. In denying DOJ's motion as moot, the court noted that a presidential pardon

does not render Flynn innocent and that acceptance of the pardon "implies a

'confession' of guilt." *Id.* at 41–42. Based on the presidential pardon, the district

---

[3] Flynn filed an emergency petition for a writ of mandamus and asked the D.C. Circuit Court to
direct the district court to grant DOJ's motion to dismiss, vacate the order appointing an amicus,
and reassign the case to a different district judge for any further proceedings. *In re Flynn*, 973 F.3d
74, 77. After granting *en banc* review, the D.C. Circuit denied Flynn's petition. *Id.* at 77–78.

court then dismissed the case as moot. *Id.* at 43.

Flynn participated in efforts to overturn the 2020 presidential election. Although he was not charged with a crime, a grand jury in Georgia recommended that Flynn be indicted "[w]ith respect to the national effort to overturn the 2020 presidential election." *Id.*, Ex. 9 at 8–9.

The U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee"), which investigated "the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol," also probed Flynn's efforts to overturn the election. *Id.*, Ex. 10 at 44–56; *Id.*, Ex. 11 at 27–28. Citing "credible evidence" of Flynn's involvement, the Select Committee issued a subpoena to Flynn and explained that Flynn:

> [A]ttended a December 18, 2020, meeting in the Oval Office during which participants discussed seizing voting machines, declaring a national emergency, invoking certain national security emergency powers, and continuing to spread the message that the November 2020 election had been tainted by widespread fraud. The day before, [Flynn] did an interview on Newsmax TV during which [he] talked about seizing voting machines, foreign influence in the election, and the purported precedent for deploying military troops and declaring martial law to "rerun" the election.

*Id.*, Ex. 10 at 46; *Id.*, Ex. 11 at 27–28. Flynn responded to the subpoena by suing the Select Committee and ten House members in this Court. *Id.*, Ex. 10 at 1–42.

As noted in the Complaint, Flynn has since co-founded election-monitoring organization The America Project, (D.E. 1 ¶ 11), and he remains an active political commentator, touring the country and speaking at conservative rallies, campaign events, and fundraisers. *See* Minchin Decl., Exs. 12–13.

5

On September 15, 2023, Andrew Weissmann—who formerly worked in the office of Special Counsel Robert Mueller—hosted an episode of the podcast *Prosecuting Donald Trump* alongside co-host Mary McCord and guest Nicolle Wallace (the "Episode").[4] Flynn has sued Defendants for the following highlighted statements that appear about halfway through the hour-long Episode:

> NICOLLE WALLACE: And I think we're post worrying about [Flynn's] feelings, right? I mean, he plotted the insurrection and he was pardoned and he, you know, is still –
> ANDREW WEISSMANN: We prosecuted, absolutely.
> NICOLLE WALLACE: Right, right.
> ANDREW WEISSMANN: We – he's – he admitted --
> NICOLLE WALLACE: Right.
> ANDREW WEISSMANN: Twice to committing a crime.
> NICOLLE WALLACE: Right.
> ANDREW WEISSMANN: And then his defense when he withdrew it was that I lied to the federal judge when I said I was guilty.
> NICOLLE WALLACE: Twice.
> ANDREW WEISSMANN: So that – so he – exactly. So I both admitted underlying crimes, which, by the way, he did and then said I committed perjury.

Weissmann Decl., Ex. 2 at 30:19–31:14.

Based on the above exchange, Flynn has sued Weissmann for implying that he did, in fact, commit the crime, *i.e.*, he willfully and knowingly made materially false statements to the FBI (the "Weissmann Statement"), and Wallace for saying that Flynn "plotted the insurrection" (the "Wallace Statement"). (D.E. 1 ¶ 15–16). Flynn alleges the Statements give rise to two causes of action: defamation and injurious

---

[4] The Episode itself and a transcript of the Episode are attached to the Declaration of Andrew Weissmann (the "Weissmann Decl."), which is submitted alongside his contemporaneously filed Rule 12(b)(2)–(3) motion. The Court may consider the Episode because it is referenced in and central to the allegations in the Complaint. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

falsehood.[5] As shown below, neither Statement is actionable.

## <u>ARGUMENT</u>

A court evaluating a Rule 12(b)(6) motion should "accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). But the court should not accept "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And "naked assertions, devoid of further factual enhancement," cannot pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. In turn, because "whether a complaint states a plausible claim is context specific," a court adjudicating a motion to dismiss must "draw on its experience and common sense." *Id.* at 663–64.

The trial court's application of common sense and experience is particularly critical in defamation cases because courts play a key role in quickly dismissing untenable defamation claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because i]n these cases, there is

---

[5] Defamation and injurious falsehood are functionally equivalent, and the defenses to both claims are identical. *See Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. 4th DCA 2002) (explaining that "the courts of this state have afforded the two torts [defamation and injurious falsehood] identical treatment"); *Miller v. Gizmodo Media Group, LLC*, No. 18-24227-CIV, 2019 WL 1790248, at *11 (S.D. Fla. Apr. 24, 2019) (counting cases for the proposition that, under "both Florida and New York law, a plaintiff cannot proceed on concurrent counts for related torts that are intended to compensate for the same alleged harm as a defamation claim") (citation omitted). *See also Reed v. Chamblee*, No. 3:22-CV-1059, 2023 WL 6292578, at *25 (M.D. Fla. Sept. 27, 2023). The instant motion simply refers to both counts as "defamation."

a powerful interest in ensuring that free speech is not unduly burdened by the

necessity of defending against expensive yet groundless litigation"); *Ctr. for Med.*

*Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325–26 (S.D.N.Y.

2021) ("Because a defamation suit may be as chilling to the exercise of First

Amendment freedoms as fear of the outcome of the lawsuit itself, courts should,

where possible, resolve defamation actions at the pleading stage.") (citation omitted).

The tort of defamation in both Florida and New York features the same

elements: a false, unprivileged, and defamatory statement about the plaintiff that is

published to a third party; fault on behalf of the defendant; and damages on behalf of

the plaintiff. *Mile Marker v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA

2002); *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014).[6] Both states also share a

common set of defamation defenses that apply to the instant suit. As shown below,

under both states' laws, the Weissmann Statement is true and shielded by the fair-

report privilege; the Wallace Statement constitutes protected opinion; and neither

---

[6] The instant motion cites both New York and Florida case law. For the reasons noted in Wallace and Weissmann's Rule 12(b)(2)–(3) motion to dismiss, filed contemporaneously herewith, New York law should apply. Regarding the relevant defenses in this case, only two potential distinctions exist. First, Florida features a mandatory pre-suit notice statute. *See* § 770.01, Fla. Stat. If Florida law applies, dismissal is warranted because Flynn failed to allege compliance with the condition precedent. *See Carroll-Brufsky v. E.W. Scripps Co.*, No. 2:11-CV, 2012 WL 1165334, at *2 (M.D. Fla. Apr. 9, 2012). Second, New York adopted an absolute, statutory fair report privilege, while Florida employs a qualified, common law privilege. *Compare Fine v. ESPN, Inc.*, No. 5:12-CV-0836, 2013 WL 528468, at *4 (N.D.N.Y. Feb. 11, 2013) (applying New York's fair-report privilege, codified at N.Y. Civ. Rights Law § 74), *with Folta v. New York Times Co.*, No. 1:17CV246, 2019 WL 1486776, at *1–*3 (N.D. Fla. Feb. 27, 2019) (explaining Florida's common law fair-report privilege). As demonstrated in Section II, *infra*, both privileges extend equally to substantively accurate accounts of information appearing in publicly available judicial records. For purposes of this motion, no choice-of-law analysis is required because Florida and New York law equally demand dismissal based on all defenses. *See Nix v. ESPN, Inc.*, No. 1:18-CV-22208, 2018 WL 8802885, at *3 (S.D. Fla. Aug. 30, 2018).

Statement was published with actual malice.

Central to these defenses—as specifically alleged in the Complaint—is Flynn's criminal prosecution in U.S. District Court for the District of Columbia. The Weissmann Statement directly comments on Flynn's prosecution, and the Complaint specifically references and relies on several pleadings in the case. (D.E. 1 ¶¶ 16–23 n.3–6). Likewise, the Wallace Statement concerning the insurrection that followed the 2020 presidential election is directly related to court cases about Flynn's efforts to overturn the election.

The Court may consider judicial filings from Flynn's criminal case and cases related to his efforts to overturn the 2020 presidential election because the judicial records are both facially authentic and factually central to the issues raised in the Complaint. *See Allison v. Parise*, No. 8:12-CV-1313, 2013 WL 877111, at *2 (M.D. Fla. Mar. 8, 2013) ("The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment"). Flynn cannot plausibly claim otherwise. *See Marder v. TEGNA Inc.*, No. 19-81283-CIV, 2020 WL 3496447, at *1 n.2, *3 (S.D. Fla. June 29, 2020) ("While Plaintiffs argue that the facts are in dispute here, they have not pointed to a single disputed fact. The publications say what they say and the [judicial records] submitted by Defendants say what they say. Consequently, this matter is appropriate for disposition on a motion to dismiss."). *See also Nix v. ESPN, Inc.*, No. 1:18-CV-22208, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018) (taking notice of

material appearing in plaintiff's filings in another lawsuit and granting motion to dismiss).

## I.   FLYNN CANNOT PLAUSIBLY ALLEGE THAT THE WEISSMANN STATEMENT IS FALSE.

A true or substantially true statement cannot give rise to a defamation claim.[7] *Byrd v. Hustler Magazine, Inc.,* 433 So.2d 593, 595 (Fla. 4th DCA 1983); *Karedes v. Vill. of Endicott*, No. 3:01-CV-1395, 2004 WL 1683146, at *3 (N.D.N.Y. Mar. 22, 2004). Under the substantial truth doctrine, to establish the element of falsity, the plaintiff must demonstrate not only that the at-issue statement is literally false, but also that the "gist" or "sting" of the statement is false. *See Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999); *Chung v. Better Health Plan*, No. 96 CIV. 7310, 1997 WL 379706, at *2 (S.D.N.Y. July 9, 1997) (explaining that a literally false statement is not actionable if the "gist" or "sting" of the false statement "convey[s] the same effect" in the mind of the audience as the truth). The Weissmann Statement is true, both literally and in gist.

The meaning of the Weissmann statement is clear on its face: Flynn admitted to the underlying crime of lying to the FBI. Flynn does not dispute that this was true. *See* (D.E. 1 ¶ 17) (acknowledging that Flynn originally pleaded guilty to the alleged crime). This alone dictates dismissal of his claim over the Weissmann statement.

---

[7] Dismissing a defamation claim on truth grounds is proper at the Rule 12 stage where, as here, the veracity of the at-issue statement is discernable from documents referenced in the complaint— including the at-issue-publication itself—or the basis for the publication's truth derives from public records. *See Marder*, 2020 WL 3496447, at *5; *Nix*, 2018 WL 8802885, at *6; *Ctr. for Med. Progress*, 551 F. Supp. 3d at 327.

In an effort to circumvent this fatal flaw in his case, Flynn is forced to give the Weissmann Statement a strained construction: that the challenged statement accused Flynn not only of pleading guilty to the underlying crime, but of actually having committed that crime. The Court's analysis, however, is dictated by what Weissmann actually said, not how Flynn characterizes it. *See Byrd*, 433 So. 2d at 595 (opining that a defamatory "statement should be considered in its natural sense without a forced or strained construction").

Weissmann clearly was referring to Flynn's admissions in his criminal case. Weissmann said: "[Flynn's] defense, when he withdrew [his guilty plea], was that 'I lied to the federal judge when I said I was guilty. So, I both admitted to underlying crimes,' which by the way he did, and then said 'I committed perjury.'" Weissmann Decl., Ex. 2 at 31:7–14. When Weissmann said "which by the way he did," he was referring to Flynn having "admitted to underlying crimes." The grammatical construction of the sentence is plain. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1318 (S.D. Fla. 2020) (noting, pursuant to a motion to dismiss, that a "plain reading of the article" contradicted the plaintiff's characterizations of the allegedly defamatory statements). The context confirms this: the statement challenged by Flynn came amid Weissmann's discussion of the circumstances of Flynn's attempt to withdraw his guilty plea; and Weissmann simply acknowledged that Flynn had admitted to the underlying crime.

Because Flynn cannot plausibly allege that the Weissmann Statement was false, the statement is not actionable.

11

## II.     THE WEISSMANN STATEMENT IS SHIELDED BY THE FAIR-REPORT PRIVILEGE.

But even if the Weissmann Statement could reasonably bear the meaning given to it by Flynn—an accusation that Flynn committed the crime charged—this case should still be dismissed on fair report grounds. A defamation plaintiff must show that the at-issue statement is unprivileged.[8] One of the most significant privileges is the fair-report privilege, which shields from liability commentary on the contents of judicial or other government records—even if the records are inaccurate. *See Rasmussen v. Collier County Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 479 (S.D.N.Y. 2012).

Where, as here, a challenged statement reflects information appearing in a government record, the privilege can be defeated *only* where the statement is not "reasonably accurate and fair" in describing the contents of government records. *Woodard v.  Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993). Under both Florida and New York law, the challenged commentary need only be a substantially correct account of information contained in such records. *See, e.g.*, *Rasmussen*, 946 So. 2d at 570 (applying Florida qualified privilege to "substantially truthful" report of "public record," including criminal information, executive orders, plea agreement, and report by government officials); *Biro*, 883 F. Supp. 2d at 477 (privilege applies to "the publication of a fair and true report on any judicial

---

[8] The fair-report privilege is properly applied on a Rule 12 motion. *See Marder*, 2020 WL 3496447, at *3 ("trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement") (citation omitted); *Ctr. for Med. Progress*, 551 F. Supp. 3d at 330; *Nix*, 2018 WL 8802885, at *6.

proceeding . . .").

The privilege allows for editorial license. For example, a defendant has the right to focus on particular portions of public records and need not "present[] both sides of every issue." *Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1319–20 (S.D. Fla. 2020) (citations omitted). And the media have "no obligation to include additional information that would portray the [p]laintiff in a more favorable light." *Id. See also Jamason v. Palm Beach Newspapers, Inc.*, 450 So. 2d 1130, 1132–33 (Fla. 4th DCA 1984) (explaining that a defendant can focus solely on a sensational excerpt of a public record—without any effort to present a neutral portrayal of the record—and remain within the privilege). Indeed, "the privilege is not lost, for example, by colorful language. . . . Editorial style is expected, and news media can phrase their coverage to catch the readership's attention." *Folta v. New York Times Co.*, No. 1:17CV246, 2019 WL 1486776, at *4 (N.D. Fla. Feb. 27, 2019) (cleaned up; citation omitted). *See also Test Masters Educ. Services, Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) (explaining that a defendant "need not choose the most delicate word available. . . it is permitted some drama in grabbing its reader's attention").

Because the sole relevant question is whether the challenged statements relay information contained in government records with reasonable accuracy, whether the underlying public record contains false allegations—or whether the defendant knew that the information is false—is irrelevant to the privilege analysis. *See Larreal*, 489 F. Supp. 3d at 1321–22; *CBS Broad. Inc. v. Counterr Group*, No. 05 CIV. 7946, 2008 WL

11350274, at *14 (S.D.N.Y. Aug. 26, 2008). Here, the Weissmann Statement accurately relays information contained in judicial records.

Weissmann's commentary that Flynn admitted to the crime of lying to the FBI and then withdrew his guilty plea accurately describes his criminal proceedings. Flynn pled guilty and admitted to the underlying crime, (D.E. 1 ¶ 17); Minchin Decl., Ex. 4, (Flynn's Plea Agreement averring "I am pleading guilty because I am in fact guilty of the offense identified in this Agreement."); *id.*, Ex. 5 at 1–6 (Flynn's Statement of Offense detailing the nature of the false statements and attesting "I am, in fact, guilty of the crime charged. . . . I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct."). At his sentencing hearing, Flynn affirmed under oath that he lied to the FBI, accepted responsibility and was guilty of the charged crime; he also confirmed that he did not want to challenge the circumstances of his FBI interview. *Id.*, Ex. 6 at 7–10, 15–16. Flynn's plea and admission of guilt produce the same effect in the mind of a reader or listener as a finding of guilt. *See Molthan v. Meredith Corp.*, No. 3:17-CV-00380, 2018 WL 2387235, at *2 (M.D. Tenn. May 25, 2018) (finding that "pleading guilty" produced the same "gist" as "convicted").

Nothing in the subsequent judicial proceedings negated Flynn's guilt. Flynn's guilty plea was never withdrawn. The court-appointed amicus concluded that "Flynn's guilt is plain." Minchin Decl., Ex. 8 at 60. Then, while the court dismissed the case based on Flynn's presidential pardon, the court noted that the pardon did not render Flynn innocent and that acceptance of the pardon "implies a 'confession'

of guilt." *Id.*, Ex. 1 at 41–42.

Thus, however the Weissmann Statement is construed, Weissmann accurately relayed information appearing in judicial records from Flynn's criminal case. The gist of the Weissmann Statement—even if it were construed as alleging that Flynn in fact committed the underlying offense—is fully supported by Flynn's criminal proceedings. The fair-report privilege therefore shields Defendants from defamation liability.

## III.   THE WALLACE STATEMENT IS PROTECTED OPINION.

Opinions cannot be defamatory. *Hoon v. Pate Construction Co.*, 607 So. 2d 423, 429 (Fla. 4th DCA 1992). The rationale for protecting opinion is simple: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974). Whether a statement is protected opinion is a question of law for the court to decide. *See From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 56 (Fla. 1st DCA 1981); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 552 (S.D.N.Y. 2020). A statement is a nonactionable opinion if it is not provably false. *See Ctr. for Med. Progress*, 551 F. Supp. 3d at 326; *Santilli v. Van Erp*, No. 8:17-CV-1797, 2018 WL 2172554, at *5–6  (M.D. Fla. Apr. 20, 2018). *See also Reed v. Chamblee*, No. 3:22-CV-1059, 2023 WL 6292578, at *16 (M.D. Fla. Sept. 27, 2023) (finding the statement that the plaintiff "align[ed] himself with a tyrannical, murderous (sportswashing) leader" was not actionable").

Hyperbolic statements are likewise not actionable. *See Santilli*, 2018 WL 2172554, at *6 (finding reference to plaintiff as a "scam artist" was rhetorical hyperbole in context of blog post); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (explaining that shielding literally false yet hyperbolic statements from defamation liability "provides assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole [that] has traditionally added much to the discourse of our Nation."). Because exaggeration is an "integral part of social discourse," hyperbolic statements imputing criminal activity are not defamatory. *See Horsley v. Rivera*, 292 F.3d 695, 701–02 (11th Cir. 2002) (finding that a statement on national television that plaintiff was "an accomplice to murder" was rhetorical hyperbole based on the social context understood by the audience).

To protect core First Amendment expression about political matters, both Florida and New York law hold that "accusations of crimes [are] unlikely to be defamatory when, as here, they are made in connection with debates on a matter of public or political importance." *McDougal v. Fox News Network*, 489 F. Supp. 3d 174, 182 (S.D.N.Y. 2020) (citing *Horsley*, 292 F.3d at 702). "This is especially true in the context of commentary talk shows like the one at issue here, which often use 'increasingly barbed' language to address issues in the news." *Id.* at 182–83 (explaining that allegations of criminal actions such as "extortion," "blackmail," and "fraud" are not defamatory when employed colloquially or hyperbolically). *See also Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295–96 (Fla. 2d DCA 1984) (finding that statements referring to the plaintiff as a "crook" and a "criminal" were

statements of opinion); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (finding that allegations stating that the plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" was a "vague statement . . . of the loose, figurative, or hyperbolic sort that is not actionable for defamation") (cleaned up); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974) (finding that the "use of words like 'traitor'" is not actionable).

Further, "pure opinion"—commentary based on facts the audience already knows—is not actionable. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) ("[A] defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."); *Rasmussen*, 946 So. 2d at 571 ("Commentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel."). *See also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294–95 (N.Y. 1986) (finding circumstances and broader social context confirmed that statements related to union labor dispute were pure opinion).

Accordingly, the Court must consider the context of the Wallace Statement and what the Episode's audience already knows. That is, the court at the Rule 12 stage must evaluate both the intended audience of the at-issue publication and how the allegedly defamatory statement fits into the audience's understanding of the plaintiff. *See From*, 400 So. 2d at 57 (affirming dismissal of defamation action and noting "the court must consider all of the circumstances surrounding the statement,

including the medium by which the statement is disseminated and the audience to which it is published") (citation omitted). *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1995) (explaining, at pleading stage, that the defendant's audience "would be expected to be aware of [plaintiff's] situation, especially since there had been such controversy surrounding the [plaintiff's] matter"); *Brian v. Richardson*, 87 N.Y.2d 46, 48 (N.Y. 1995) (affirming dismissal of defamation complaint and noting "the broader social context in which a published statement was made should be considered in determining whether the statement is one conveying opinion").

In light of the above, the Wallace Statement is protected opinion. Initially, whether someone plotted an insurrection is "loose, figurative" language that cannot be objectively falsified and constitutes constitutionally protected hyperbole *See Cooper v. Adair*, No. CV-88-2272, 1988 WL 101328, at *1 (E.D.N.Y. Sept. 26, 1988); *Small Bus. Bodyguard*, 230 F. Supp. 3d at 312. Regardless of any legal or technical meaning, "insurrection"—not unlike "fraud," "murder," "conspiracy," and "extortion"—is subject to a wide range of colloquial and nonliteral applications. *See Horsley*, 292 F.3d at 702; *McDougal*, 489 F. Supp. 3d at 182. The same is true with respect to whether a person "plotted." *See Reed*, 2023 WL 6292578, at *16 ("whether a person 'aligns' himself with another is an amorphous expression that cannot be proven").[9]

The Wallace Statement is also protected based on the broader context of the Episode and facts already known by Defendants' intended audience. *Prosecuting*

---

[9] To the extent the Court finds that "plotted the insurrection" constitutes a statement of objective fact, then the Wallace Statement would be true, based on enormous amounts of evidence demonstrating Flynn's activities related to efforts to overturn the 2020 presidential election.

*Donald Trump* listeners would be aware of Flynn's well-chronicled activities leading up to January 6, 2021, including that a grand jury in Georgia recommended he be indicted for his involvement in efforts to overturn the 2020 presidential election and that he was subpoenaed by the federal government for calling for martial law, floating the idea of seizing voting machines, participating in rallies promoting the election-overturning effort, and advocating military deployment and re-running the election in swing states. That Flynn "plotted the insurrection" is a protected opinion based on these widely known facts. *See From,* 400 So. 2d at 57 (affirming dismissal of defamation action where "[t]he statements were made in a tennis column in a local newspaper to an audience who would be expected to be aware of the tennis pro's situation . . . [and] his performance as a tennis pro in this community provides the assumed facts from which [the defendant] drew his opinion).

In sum, although Flynn may resent the characterization that he "plotted the insurrection," the Wallace Statement is precisely the type of political, rhetorical, and hyperbolic opinion entitled to full constitutional protection.

## IV.   THE STATEMENTS WERE NOT PUBLISHED WITH ACTUAL MALICE.

If a defamation plaintiff is a public official, he must demonstrate that the defendant published the challenged statements with actual malice, *i.e.*, with knowledge of the statements' falsity or a reckless disregard for their truth or falsity. *New York Times v. Sullivan*, 376 U.S. 254 (1964). *See also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (explaining that the actual malice "standard is necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment").

Flynn has not—and cannot—meet this daunting standard.

### A.    <u>Flynn is a public official.</u>

Whether Flynn is a public official is a question of law. *See Turner*, 879 F.3d at 1271–72 (affirming dismissal of defamation action and determining plaintiff's public figure status as a matter of law); *Prince v. Intercept*, 634 F. Supp. 3d 114, 134 (S.D.N.Y. 2022) ("Whether or not a person is a public figure is a question of law for the court to decide.") (ellipses and citation omitted). Flynn's status as a former National Security Advisor, three-star Army General, and Director of the Defense Intelligence Agency squarely qualifies him as a public official. *See* (D.E. 1 ¶ 10); *Rosenblatt v. Baer*, 383 U.S. 75, 87 (1966) ("the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs"). *See also Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 299–301 (1971) (explaining that a former mayoral candidate was a public official); *Finkel v. Sun Tattler Co., Inc.*, 348 So. 2d 51, 52 (Fla. 4th DCA 1977) (explaining that a former public official does not lose public official status after stepping down); *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 435–36 (5th Cir. 1987) (same).[10]

### B.    <u>Flynn fails to plausibly plead actual malice.</u>

Because Flynn is a public official, his defamation claims will be dismissed

---

[10] Flynn is not only a public official; he is also a public figure—who likewise must demonstrate actual malice—by virtue of his frequent public appearances and nationwide speaking tours regarding American politics. *See* Minchin Decl., Exs. 12–13 (demonstrating Flynn's public-figure status); *Turner*, 879 F.3d at 1272 (taking note of press reports to determine the plaintiff's public figure status).

unless he meets the "daunting" standard of actual malice, which requires him to plausibly allege facts showing that Defendants either knew their Statements were false or recklessly disregarded the Statements' truth or falsity. *See Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *16, *40 (M.D. Fla. April 3, 2015). *See also Biro*, 963 F. Supp. 2d at 278–79 ("Not only is proving actual malice a heavy burden, but, in the era of *Iqbal* and *Twombly*, pleading actual malice is a more onerous task. . . . [as] Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation claim") (cleaned up). Here, Flynn has not plausibly pled any facts to suggest that Weissmann or Wallace subjectively believed that their Statements were false.

## 1. The Weissmann Statement

Flynn's claim that the Weissmann Statement was published with actual malice boils down to his allegation that because Weissmann was the "top deputy to special counsel Robert Mueller," he "was aware of" Flynn's denials of wrongdoing in the case, as supported by "exculpatory evidence" demonstrating both Flynn's innocence and procedural impropriety in the case.[11] (D.E. 1 ¶¶ 18–19, 21–23). But even if the Court could impute knowledge of the details of Flynn's investigation and prosecution because he was a lead prosecutor in the Special Counsel's Office,

---

[11] The Complaint does not allege that Weissmann was involved with Flynn's prosecution. Flynn's attempt to impute knowledge to Weissmann because of his mere association with the Special Counsel's office fails as a matter of longstanding constitutional law. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (explaining that imputing knowledge of falsity to everyone at the *Times* was improper because "the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement").

Weissmann's awareness of Flynn's denials and alleged exculpatory evidence, if true, does not demonstrate actual malice because they have nothing to do with whether Weissmann had subjective doubts about the truth of his statements.

Indeed, courts recognize that a defamation plaintiff's denials of wrongdoing "are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the [defendant] to the likelihood of error."[12] *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (citation omitted); *Jacoby*, 537 F. Supp. 3d at 1311 (M.D. Fla. 2021) (finding that a defendant's knowledge of the plaintiff's denials of wrongdoing was not sufficient to plausibly allege actual malice), *aff'd*, No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021). Weissmann's alleged awareness of exculpatory evidence is equally unpersuasive because a defendant is "not required to balance its [statements] with potentially mitigating factors so long as the reporting [does] not purposely make false statements." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1236 (Fla. 3d DCA 2021) (cleaned up). *See also Jacoby*, 2021 WL 5858569, at *5 (explaining that, for actual malice purposes, a plaintiff "is not entitled to having [d]efendants credit his preferred sources of information or structure its [statements] in the manner that he desires"); *Brimelow*, 2021 WL 4901969, at *2 (explaining that "the existence of contrary evidence" does not indicate actual malice).

In any event, Flynn's allegation that Weissmann was "aware of" the

---

[12] A plaintiff's denials are especially weightless when, as here, they occur in the context of a criminal prosecution, where the defendant is expected to maintain his innocence.

circumstances of his criminal prosecution actually *negates* any inference of actual malice. Those circumstances include not only Flynn's position as detailed in his Complaint, but also other key facts that pointed to Flynn's guilt: (a) the court-appointed amicus brief demonstrating that "Flynn's guilt is plain" and "proof that he lied is straightforward," *see* Minchin Decl., Ex. 8 at 48–64; (b) the fact that the court, too, did not credit Flynn's position, *id.*, Ex. 1 at 27–38 (including the court's examination of Flynn's alleged exculpatory evidence and noting "powerful evidence" demonstrating Flynn's guilt), *id.,* Ex. 3 at 42–43 (finding the evidence and Flynn's admissions "make clear that Mr. Flynn made those false statements"); and (c) that the court noted Flynn's presidential "pardon implies a 'confession' of guilt." *Id.*, Ex. 1 at 41 (citation omitted.) Familiarity with the case would therefore be no indication of actual malice.[13]

In sum, Flynn has failed to plausibly allege that the Weissmann Statement was published with actual malice because Flynn alleges no facts to demonstrate that Weissmann subjectively doubted the truth of his challenged statement.[14]

---

[13] The Complaint cites a single article as evidence of allegedly voluminous, publicly available evidence that Flynn was innocent of the charge of lying to the FBI. (D.E. 1 ¶ 17(iv) n.7). However, there is an extensive public record of the facts supporting the criminal charge that Flynn lied to the FBI. *See, e.g.*, S. Rep. No. 116-290, vol. V at 24-47 (2020) (Senate Select Intelligence Committee report available at https://www.intelligence.senate.gov/publications/report-select-committee-intelligence-united-states-senate-russian-active-measures); DOJ Report on the Investigation into Russian Interference in the 2016 Presidential Election, vol II at 752-776 (March 2019) (Special Counsel Mueller report available at https:www.justice.gov/archives/sco/file/1373816/download).

[14] The Complaint also alleges in conclusory fashion that both Weissmann and Wallace maintain "partisan animus" against Flynn based on his "affiliation with President Trump." (D.E. 1 ¶ 25). A defendant's bias or ill will—even if true—does not demonstrate actual malice. *See Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (finding "intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood");

## 2.  The Wallace Statement

Flynn's only factual allegation about the Wallace Statement is that he has never been criminally charged with insurrection. (D.E. 1 ¶ 18). Yet, leaving aside that Wallace's Statement constitutes an unfalsifiable and hyperbolic opinion based on Flynn's well-documented actions, the fact that Flynn has not been charged with an obscure, rarely invoked crime does not demonstrate the falsity of the Wallace Statement (*i.e.,* whether he encouraged the overturning of the 2020 presidential election, regardless of any criminal charge), which is the prerequisite of actual malice. *See United States v. Griffith*, No. CR 21-244-2, 2023 WL 2043223, at *3 n.5 (D.D.C. Feb. 16, 2023) (demonstrating the propriety of characterizing participants in the January 6 protest at the Capitol as "insurrectionists" despite the lack of criminal charges under Section 2383). In turn, the fact that no criminal charge occurred says nothing about whether Wallace subjectively believed anything she said was false. *See Jacoby*, 2021 WL 5858569, at *5 (upholding dismissal with prejudice on actual malice grounds because the complaint did not address the defendant's subjective knowledge).

## CONCLUSION

Michael Flynn sued Defendants for speech that lies at the heart of the First Amendment. He sued regarding statements that are true, protected opinion, and not published with actual malice; he sued about accurate summaries of judicial records;

---

*McDougal*, 489 F. Supp. 3d at 185 (finding that allegations of animus and political bias were both irrelevant to the actual malice analysis and constituted "pure speculation, supported not by facts but by only conclusory statements").

he sued about political commentary; and, perhaps most brazenly, he sued Defendants for accurately representing his own sworn statements. For these reasons, Defendants respectfully ask the Court to dismiss the instant suit with prejudice.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned certifies that on December 21, 2023 she conferred with Plaintiff's counsel via email in an effort to resolve all or part of this motion. Plaintiff opposes the relief sought in the motion.

Dated: January 2, 2024          Respectfully Submitted,

SHULLMAN FUGATE PLLC

*/s/ **Deanna K. Shullman***
Deanna K. Shullman (Fla. Bar No. 514462)
dshullman@shullmanfugate.com
Rachel E. Fugate (Fla. Bar No. 144029)
rfugate@shullmanfugate.com
Minch Minchin (Fla. Bar No. 101590)
mminchin@shullmanfugate.com
Amber A. Couzo (Florida Bar No. 1031514)
acouzo@shullmanfugate.com
100 South Ashley Dr., Suite 600
Tampa, FL 33602
Tel: (813) 935-5098

*Attorneys for MSNBC*